## WING & SON v. PADGETT.

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1913. Rehearing Denied Nov. 15, 1913.)

SALES (§ 473*)—CONDITIONAL SALES—NECESSITY OF RECORD—PURCHASER FROM BUYER—TITLE OBTAINED.

Plaintiffs placed a piano with a possible buyer on trial, the written agreement therefor providing that, if after four weeks' trial it was satisfactory, the buyer would make an agreement to purchase, on terms stated, by monthly payments; the piano to become the buyer's property on full payment. After the four weeks' trial, the buyer made the first payment, expressing his satisfaction. The formal agreement of purchase was never made. Held, that under the statute (Rev. Civ. St. 1911, art. 5654) providing that all agreements for the sale of chattels retaining title in the seller after delivery to the buyer shall be void as to bona fide purchasers and creditors, unless registered like chattel mortgages, there being a completed sale with reservation of title in the seller when the buyer accepted the piano and made the first payment, and there having been no registry of the contract, a purchaser in good faith from the buyer took good title.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1377–1390; Dec. Dig. § 473.*]

Appeal from Tarrant County Court; Charles T. Prewett, Judge.

Action by Wing & Son against H. A. Padgett. Judgment for defendant, and plaintiff appeals. Affirmed.

Dedmon & Potter and Charles E. Witt, all of Ft. Worth, for appellant. J. C. Miller and Gillespie & Altman, all of Ft. Worth, for appellee.

HUFF, C. J. Appellants sued appellee to recover a piano, in the county court of Tarrant county. Appellants are dealers in pianos in New York, and on the 22d day of November, 1910, appellants, apparently in response to a letter from J. C. Polk, stated, "Since you wish to receive the piano in a month or so, we suggest you place your order with us now," to prevent a rush. After describing the piano as "very beautiful," they say, "You will find a free trial blank again inclosed which needs simply to be filled out and returned." J. C. Polk on December 5, 1910, lived in Ft. Worth, Tex., but, for reasons not disclosed in this record, has moved to parts unknown. On the day last mentioned, he made a request for the trial of one of the pianos sold by appellants, the form of which was furnished by appellants to Polk, which he filled out and signed. It is headed: "This is positively not an order. It only gives your permission for us to send a piano for free trial." At the side of the trial order is printed: "To send for a piano on trial simply fill out and return this blank. You pay nothing down or on deposit. We pay all expenses in advance. We will ship the piano as soon as possible after we receive the blank, giving us permission to do so. You are not to keep the piano unless it proves entirely satisfactory in every respect and will be under no obligation to do so, no more than if you were examining it in our wareroom or factory. Our willingness to send the Wing piano on trial in this manner to any part of the United States at our own risk and expense is conclusive evidence of its high quality. We hire truckmen to unpack piano and deliver it right in your parlor."

The blank filled out is as follows: "Free Trial Blank. December 5, 1910. Messrs. Wing & Son, 9th Ave., 13th & Hudson Sts., New York: You may deliver to my house one Wing piano, style 29, in dark, rich mahogany case, with stool and scarf, to this address: Town, Ft. Worth; Street, No. 1059 Butter; State of Texas. This piano is to be placed in my parlor without any expense to me whatever on trial only. Wing & Son are to pay the freight, cartage and all other expenses. There is no agreement by me to purchase this piano but I will allow it to remain in my house on trial for four weeks and if it proves satisfactory, and I decide to purchase it, I will make an agreement with you to pay you $12.00 down, three hundred and forty-three dollars, ($343.00) (beneath is printed "State fully price of piano on above line"), in the following way: $12.00 per month, $———, (beneath this "State amount of first payment") four weeks after arrival $12.00 (beneath this is "State amount of monthly or other payments"). The piano to become my property upon completion of full payment as above. If, however, the piano does not prove satisfactory, you are to remove it from my house without any expense to me. It is distinctly understood that I am to pay nothing for freight, cartage, or any other expense. Yours truly, J. C. Polk, Ft. Worth, Texas. Address: 1059 Butter St."—and is indorsed, "Received December 12, 1910." On December 13, 1910, appellants wrote Polk that they had just received the trial blank dated December 5, 1910, and stated therein: "The price of the piano, it is agreed is three hundred and forty-three dollars ($343.00) payable $12.00 cash after trial and $12.00 per month thereafter." They say in the letter they will take a little more time with Polk's permission, in selecting the piano, etc.

The piano was shipped out by appellants February 14, 1911. March 3, 1911, Polk wrote the following letter from Ft. Worth, Tex.: "Ft. Worth, 3—3—1911. Dear Wing and sons: I write to let you know that I received the most magnificent piano Sat. Feb. 25 and it came to me just as it left you in good shape

and my wife she is just tickled to death over it. Everybody is struck on it. I myself think it is the beautifulY piano I ever saw. Now after the 30 days is out you may be sure you will get your first payment, or before. Now I will say good by and you will hear from me in short. Resp. Yours, J. C. Polk. Was 1059 Rosdail. Now 1000 Jefferson Ave."

On the 8th day of April, 1911, Polk remitted to appellants $12.50, which appellants received and receipted therefor by letter of April 26, 1911, in which it is stated: "We have your favor of the 8th instant with remittance of $12.50, which we credit on first payment on a piano. We thank you for this and inclose receipt." After calling attention to their guaranty of the piano and that they were not responsible for tuning, etc., but in connection therewith used the expression, "The saving you have secured by purchasing from us" could not be had from others, and asking for his further opinion of the piano as compared with others, and concludes, "We also inclose regular agreement, which you will please sign and return to us." The instrument mentioned is as follows: "J. C. Polk, Ft. Worth, Texas, Feb. 25, 1911. $343.00. I promise to pay to Wing & Son at their office in New York three hundred and forty-three dollars, in the following way:

Twelve dollars on March 1, 1911................. $ 12
And twelve dollars each month for twenty-
　seven months thereafter....................... 324
And one month after that a final payment of
　seven dollars ................................ 7
　The above being for a certain Wing piano,
style 29, wood mahogany. Case No. 37925.

　Total ......................................... $343

"It is understood and agreed that said piano is now and shall be held in my possession as bailee and shall remain the property of Wing & Son until this note shall have been paid in full. ————————."

Thereafter appellants wrote Polk on May 23, June 23, and July 12, 1911, urging Polk to sign and return the sale contract. This Polk never did. Appellants, failing to get a response to their letters from Polk, secured the services of Mr. Dedmon, an attorney, who investigated the matter and learned "Mr. Polk" was a negro and had transferred the piano to H. A. Padgett of Ft. Worth, the appellee herein, who stated he had bought the instrument from Polk, paying therefor $70. It appears from the record that appellants had made inquiry as to Polk's standing, etc., before sending out the piano and were informed he was chief of police of Ft. Worth. The appellee, Padgett, testified for himself that he was in the loan business in Ft. Worth, Tex., buying salaries and making small loans; that he did not know Wing & Son and never knew that they had any claim on the piano in question; that Polk told him there was nothing against the piano except two loans to local parties, aggregating about $70;

that he had loaned Polk $35 on the piano and afterwards paid off the other two loans and canceled his own debt in consideration of the transfer of the piano from Polk to himself. He made no effort to ascertain from appellants or from any other source the ownership of the piano. Appellants did not file trial blank filled out by Polk, his letter, or any other paper or instrument with reference to the piano, for registration in the county clerk's office of Tarrant county, as required for chattel mortgages. A jury was selected to try the case. The trial judge peremptorily instructed the jury to return a verdict for appellee, which they did, and judgment was entered in accordance therewith.

Up to the time J. C. Polk accepted the piano, the relation between appellants and J. C. Polk was that of bailor and bailee, and the instruments evidencing that relationship were not required to be filed as a chattel mortgage. Thus far, we agree with the contention of appellants. If J. C. Polk accepted the piano upon the terms proposed, then the relation of bailor and bailee was changed to one of vendor and vendee, or mortgagor and mortgagee under our statute. Our statute provides that: "All reservations of the title to or property in chattels as security for the purchase money thereof shall be held to be chattel mortgages and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless registered as required of chattel mortgages." Rev. Civ. St. 1911, art. 5654. The scope and purpose of this article has been frequently discussed by the Supreme Court and Courts of Civil Appeals, relieving us of that duty. Harling v. Creech, 88 Tex. 300, 31 S. W. 357; Eason v. De Long, 38 Tex. Civ. App. 531, 86 S. W. 347. The question for our determination is: Was there a sale effected with "reservation of title," "as security for the purchase money thereof"? In the "free trial blank" sent out by appellants to Polk, to be filled out and signed by him, Polk stipulated December 5, 1910, "I will make an agreement with you to pay you $12.00 down, three hundred and forty-three dollars ($343.-00) in the following way: $12.00 per month; four weeks after arrival $12.00. The piano to become my property upon completion of full payment as above." On the 13th of December, 1910, appellants wrote, acknowledging receipt of the filled out trial blank and therein say: "The price of the piano is agreed on. It is three hundred and forty-three dollars ($343.00), payable $12.00 cash after trial and $12.00 per month thereafter." The appellants thereby agreed to accept the price offered by Polk and also agreed to the terms offered by him. The only thing left to complete the trade was a trial by Polk and his satisfaction with the instrument. The piano was shipped by appellant February 14, 1911, and received February 25, 1911,

by Polk, according to his letter of March 3, 1911. After the trial of the piano by Polk, we do not think appellants should have a doubt, and we are quite sure we have none, that it proved "entirely satisfactory" to Polk. He says he received "the most magnificent piano." "I myself think it is the beautifully piano I ever saw." His wife was "tickled to death with it." "Everybody is struck on it." Polk continued "after the thirty days is out you may be sure you will get your first payment, or before."

We think from the testimony Polk was enthusiastically satisfied with the piano and that he accepted under the proposed terms with alacrity. Polk sent $12.50 to appellants April 8, 1911, 50 cents more that he agreed to pay on the first payment, but in the exuberance of his enthusiasm he was prodigal in his payment. And on the 26th of April, 1911, appellants acknowledged the receipt of the money on the first payment and receipted therefor. Every term of a sale was completed. Appellants found a purchaser for their piano, who accepted it and agreed with them on the price and terms, was satisfied with the instrument, made the first payment, and readily assented to pay the balance as stipulated. In the letter acknowledging receipt of the money, appellants express gratification over Polk's satisfaction and call attention to the special features of their guaranty, with reference to tuning the piano and assure him "the saving you have secured by purchasing from us" was not to be had elsewhere. They thereby recognized that Polk had purchased. It is insisted that appellants inclosed in the letter of April 26th a "regular agreement" to be signed and returned to them, which Polk never did, and therefore no agreement was reached. The contract up to that time did not require a "regular agreement" before the sale was complete. Polk had only stipulated that he would make "an agreement." After this agreement had been reached and the money accepted thereon, appellants then asked for the execution of a "regular agreement." The fact that this was not signed did not defeat the agreement theretofore entered into. Polk stipulated that he should pay $343 for the piano, $12.00 cash and the balance in monthly installments of $12 each, and that the piano was to become his property upon the completion of the full payments as above. Appellants thereby clearly reserved the title in the instrument to secure the purchase money.

Under our statute, this was a chattel mortgage, which if not reduced to writing and registered as required of chattel mortgages is "void as to creditors and bona fide purchasers, unless in writing and recorded as chattel mortgages." It is undisputed that it was not so registered. It is also an undisputed fact, as established by this record, that appellee was not only a creditor but a purchaser of the piano for value, without notice of appellants' claim. Appellee therefore took a good title thereto as against appellants. The circumstances in this case show a great hardship has been worked against appellants, but this is not the fault of the law, and, in so far as the record shows, not the fault of appellee. The appellants have trusted a stranger too far and must suffer the consequences. We think the trial court properly instructed the jury.

The case is therefore affirmed.